## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMMAR IDLIBI,<br>    *Plaintiff*,<br><br>    v.<br><br>MARY-MARGARET D. BURGDORFF,<br>    *Defendant*. | No. 3:22-cv-902 (JAM) |

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

The plaintiff in this case has sued a state court judge for $10 million because she ruled against him. I will grant the judge's motion to dismiss on multiple grounds including the *Rooker-Feldman* doctrine, the Eleventh Amendment, absolute judicial immunity, and failure to state a plausible claim for relief.

### BACKGROUND

Plaintiff Ammar Idlibi has filed this federal lawsuit against defendant Mary-Margaret Burgdorff who is a judge of the Connecticut Superior Court. The amended complaint stems from state court proceedings to terminate his parental rights. *See* Conn. Gen. Stat. § 17a-112(j)(3)(B)(i). Judge Burgdorff conducted a trial and entered an order terminating Idlibi's parental rights in July 2019.[1] The Connecticut Appellate Court affirmed Judge Burgdorff's decision, and both the Connecticut Supreme Court and the United States Supreme Court denied further review. *See In re O. I.*, 197 Conn. App. 499 (2020); *In re O. I.*, 335 Conn. 924, *cert. denied sub nom. A. I. v. Connecticut*, 141 S. Ct. 956 (2020).

In this federal lawsuit, Idlibi accuses Judge Burgdorff of being prejudiced against him for religious reasons and of misrepresenting the evidence when she terminated his parental rights.[2]

---

[1] Doc. #18 at 8–9 (¶ 39).
[2] *Id.* at 9–16 (¶¶ 40–65, 67).

He further alleges Judge Burgdorff corrupted the appeal proceedings by communicating about the case with others, including a judge of the Connecticut Appellate Court who wrote the opinion affirming Judge Burgdorff's ruling.[3]

Idlibi alleges violation of his rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, as well as state law claims for intentional infliction of emotional distress, recklessness, and negligence.[4] He seeks monetary damages of at least $10 million as well as injunctive relief to require Judge Burgdorff to abstain from further interfering with his attempts to regain his parental rights.[5] Judge Burgdorff has now moved to dismiss all of Idlibi's claims for lack of jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).[6]

## DISCUSSION

The standard that governs a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is well established. A complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain the Court's subject-matter jurisdiction as well as the plaintiff's grounds for relief. *See Brownback v. King*, 141 S. Ct. 740, 749 (2021); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[7] As the Second Circuit has explained, "in order to state a claim on which relief can be granted, the factual allegations of a complaint must be enough to raise a right to relief above the speculative level, and make the claim at least plausible on its face." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). Moreover, "[w]e accept as true all factual allegations and draw from them all reasonable inferences; but we are not required

---

[3] *Id.* at 19–29 (¶¶ 74–87). Although Idlibi devotes much of his complaint to assailing the judge who wrote the Appellate Court's ruling, he says that he has declined "for strategic reasons" to name this judge as a defendant in this case. *Id.* at 19 (¶ 72).

[4] *Id.* at 1, 30–33 (¶¶ 93–108).

[5] *Id.* at 33–34 (¶¶ 1–3).

[6] Doc. #27.

[7] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 90–91 (2d Cir. 2021).

The Court must read the allegations of a *pro se* complaint liberally to raise the strongest arguments that they suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*). Still, notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See ibid.*

### Rooker-Feldman *doctrine*

The *Rooker-Feldman* doctrine bars federal district courts from hearing "cases that function as *de facto* appeals of state-court judgments." *Sung Cho v. City of N.Y.*, 910 F.3d 639, 644 (2d Cir. 2018). For the *Rooker-Feldman* doctrine to bar a plaintiff's claim, "(1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Id.* at 645.

The *Rooker-Feldman* doctrine applies here. First, Idlibi lost in state court. Second, he alleges he was injured by the state court judgment that terminated his parental rights. Third, he invites review and rejection of the state court judgment. Fourth, the state court judgment was issued well before he filed this lawsuit.

To be sure, Idlibi has been careful to frame his amended complaint in a manner that does not explicitly seek reversal of the state court's judgment. But he asks for money damages caused by Judge Burgdorff's supposedly wrongful ruling and its affirmance on appeal. As the Second Circuit has made clear, "we must scrutinize the injury of which a plaintiff complains as a

necessary step toward determining whether the suit impermissibly seeks review and rejection of a state court judgment." *Charles v. Levitt*, 716 F. App'x 18, 21 (2d Cir. 2017). No matter how artfully a plaintiff may frame a complaint, the *Rooker-Feldman* doctrine applies when a federal court cannot grant the requested relief without necessarily reviewing and rejecting a state court judgment. *See Rodriguez v. Diaz*, 777 F. App'x 20, 21 (2d Cir. 2019) (*Rooker-Feldman* doctrine applied because "[r]eaching the merits of Rodriguez's claims would necessarily require the district court to reassess the state court's judgment"). That is what Idlibi seeks here.

Accordingly, I conclude that the *Rooker-Feldman* doctrine precludes the exercise of federal jurisdiction over this lawsuit. But even if the *Rooker-Feldman* doctrine did not dictate dismissal of this action, I would dismiss Idlibi's official-capacity and individual-capacity claims against Judge Burgdorff for the reasons set forth below.

### *Official capacity claims*

It is well settled that the Eleventh Amendment and related principles of state sovereign immunity generally divest the federal courts of jurisdiction over lawsuits by private citizens against the States, any state government entities, and any state government officials in their official capacities. *See Lewis v. Clarke*, 581 U.S. 155, 161–62 (2017); *T.W. v. N.Y. State Bd. of L. Examiners*, 996 F.3d 87, 91–92 (2d Cir. 2021). For this reason, federal courts routinely dismiss official-capacity claims against state court judges. *See, e.g.*, *Thomas v. Martin-Gibbons*, 2021 WL 2065892, at *1–2 (2d Cir. 2021); *Pappas v. Lorintz*, 832 F. App'x 8, 12 (2d Cir. 2020); *Hahn v. New York*, 825 F. App'x 53, 54–55 (2d Cir. 2020).

Idlibi fails to show grounds for any exception to this rule. He does not argue, for example, that the State of Connecticut has waived its Eleventh Amendment immunity or that Congress has abrogated the Eleventh Amendment for the types of claims he alleges or more

generally for claims against state court judges. *See Chris H. v. New York*, 740 F. App'x 740, 741 (2d Cir. 2018) ("Nor has Congress abrogated state immunity for claims brought under § 1983 and § 1985.").

Idlibi invokes what is known as the "*Ex parte Young*" exception to Eleventh Amendment immunity: an exception for lawsuits against a state official seeking injunctive relief against the state official's ongoing violation of federal law. *See Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). But Idlibi's complaint is all about what Judge Burgdorff did several years ago, and he does not allege facts to suggest that Judge Burgdorff is engaged in any ongoing violation of his rights. Instead, he alleges in no more than a vague and conclusory manner that he (Idlibi) "continues with his ongoing efforts to retain his parental rights through the legal system" and that "the defendant judge is very unlikely to abstain from interfering with plaintiff's ongoing efforts to retain his parental rights, both in her individual capacity and in her official capacity."[8]

In any event, the *Ex parte Young* exception "does not normally permit federal courts to issue injunctions against state-court judges or clerks," because "[u]sually, those individuals do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties." *See Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021). Accordingly, the Eleventh Amendment bars Idlibi's official-capacity claims against Judge Burgdorff.

### *Individual capacity claims*

As to Idlibi's individual-capacity claims, Judge Burgdorff invokes the doctrine of absolute judicial immunity.[9] "A long line of this Court's precedents acknowledges that,

---

[8] Doc. #18 at 29–30 (¶¶ 90, 92).
[9] Doc. #27 at 22–27.

generally, a judge is immune from a suit for money damages," because "[a]lthough unfairness and injustice to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991) (*per curiam*). The doctrine of absolute judicial immunity applies with equal force to both federal law claims and Connecticut state law claims. *See Gross v. Rell*, 585 F.3d 72, 80 (2d Cir. 2009).

It is true that the doctrine of absolute judicial immunity is subject to exception "for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity" and "for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12. But when applying these exceptions, the Supreme Court has instructed that "the relevant inquiry is the 'nature' and 'function' of the act, not 'the act' itself." *Id.* at 13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). "In other words, we look to the particular act's relation to a general function normally performed by a judge," and "a judge 'will not be deprived of immunity because the action he took was in error … or was in excess of his authority.'" *Ibid.* (quoting *Stump*, 435 U.S. at 356).

Indeed, "if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a 'nonjudicial' act, because an improper or erroneous act cannot be said to be normally performed by a judge." *Id.* at 12. And because the focus is on the nature and function of the act rather than the act itself, "a judicial act 'does not become less judicial by virtue of an allegation of malice or corruption of motive.'" *Id.* at 13 (quoting *Forrester v. White*, 484 U.S. 219, 287 (1988)). Put differently, "judicial immunity is not overcome by allegations of bad faith or malice." *Id.* at 11.

Idlibi mostly complains about Judge Burgdorff's ruling that terminated his parental rights, claiming that this ruling depended on the judge's misrepresentation and distortion because of her religious animosity against him. But as *Mireles v. Waco* makes clear, such allegations of bad faith and malice are not enough to pierce the protections of absolute judicial immunity. It is otherwise beyond dispute that the nature and function of the act challenged—the issuance of a ruling deciding a contested court matter—is quintessentially a judicial function well within the scope of absolute judicial immunity. "The principal hallmark of the judicial function is a decision in relation to a particular case." *Bliven v. Hunt*, 579 F.3d 204, 211 (2d Cir. 2009).

In *Gross v. Rell*, the Second Circuit ruled that a probate judge had absolute judicial immunity from a litigant's claims including violation of the Americans with Disabilities Act, conspiracy under 42 U.S.C. § 1985, violation of due process rights, abuse of process, and negligent and intentional infliction of emotional distress. 585 F.3d. at 83. Evidence in that case strongly showed that the judge had imposed an involuntary conservatorship in plain violation of an elderly man's statutory rights to notice of the proceeding, to be present at the proceeding, and–as a non-resident of Connecticut—to be subject to any such proceedings at all. *Id.* at 76–78, 83–84.

Still, the Second Circuit ruled that the judge was entitled to absolute immunity. It was undisputed that the judge had the power to adjudicate conservatorship applications. Despite the judge's manifest mishandling of the proceeding in violation of statutory requirements, there was no showing that he had knowingly acted in the "clear absence of all jurisdiction" as distinct from acting "in excess" of his jurisdiction as limited by the statute. *Id.* at 83–86.

Idlibi's claims here fail for the same reasons. It is undisputed that Judge Burgdorff had the power to conduct a proceeding for the termination of parental rights. Even if I credit all of

Idlibi's claims about how Judge Burgdorff misrepresented and distorted the evidence for improper reasons, it would not be enough to show that Judge Burgdorff acted in the clear absence of all jurisdiction and thus to overcome judicial immunity.

Idlibi further alleges that Judge Burgdorff later corrupted the appeal of his case by means of various *ex parte* communications including with the judge who wrote the decision for the Appellate Court that affirmed Judge Burgdorff's decision. But I need not decide if this type of misconduct falls within the scope of absolute judicial immunity because Idlibi has not alleged non-conclusory facts to suggest that Judge Burgdorff engaged in any improper communications in the first place.

> The amended complaint alleges the following concerning improper communications:
>
> On or after October 8, 2029 [*sic*], in her individual capacity, and in clear absence of all jurisdiction, defendant unlawfully communicated with at least one clerk, one Superior Court judge and/or one Appellate Court judge in a conspiratorial fashion violating plaintiff's constitutional right to fundamental fairness through a fairly reviewed appeal, and to ensure plaintiff's deprivation of his constitutional parental rights by exerting influence on the outcome of plaintiff's appeal and/or on the outcome of plaintiff's other filings in this case that sought to reverse defendant's judgment.[10]

The complaint does not allege any basis for Idlibi to know that any such communications actually occurred. It does not allege that he was present for or party to any such communications or that he had any other grounds to know whether Judge Burgdorff engaged in any communications with other court personnel or any judges of the Appellate Court. Instead, Idlibi does no more than speculate that such communications must have occurred by inference from the various errors he says that the Appellate Court made when affirming Judge Burgdorff's ruling against him. He claims that these errors lend "further factual support of defendant's

---

[10] Doc. #18 at 17 (¶ 70); *see also id.* at 18 (¶ 71) ("On or after October 8, 2029 [*sic*], in her individual capacity, and in clear absence of all jurisdiction, defendant contacted Appellate Judge Christine E. Keller ('judge Keller') in a conspiratorial fashion to ensure the defeat of plaintiff's appeal, which sought to reverse defendant's judgment.").

conspiratorial conduct and in a clear 'meeting of the minds' pattern between defendant and judge Keller."[11]

As noted above, a complaint may not survive a motion to dismiss unless it alleges *facts*— as distinct from conclusory allegations—that establish plausible grounds for relief. As many courts have recognized, an allegation that is couched as a "fact" may be discounted as conclusory if it is not apparent that the plaintiff would have any basis or grounds to know the fact to be true.[12] This is in keeping with the Supreme Court's recognition that "naked assertions devoid of further factual enhancement" are not enough to establish plausible grounds for relief. *Iqbal*, 556 U.S. at 678.

I recognize that the factual allegations of a complaint need not be based on a plaintiff's firsthand knowledge and that a plaintiff may allege facts "on information and belief" where such facts are "peculiarly within the possession and control of the defendant." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Still, "this does not give [a plaintiff] *carte blanche* to make baseless assumptions about otherwise permissible conduct." *Ray v. Ray*, 799 F. App'x 29, 31 n.2 (2d Cir. 2020). The Second Circuit has declined to accept a plaintiff's allegations with

---

[11] *Id.* at 19–25 (¶¶ 74, 76, 78–80, 82).

[12] *See Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 79 (N.D. Cal. 2020) ("Plaintiffs make a conclusory assertion that Defendants 'had reason to know that the confidential information and trade secrets were acquired under circumstances giving rise to the duty to maintain their secrecy or limit their use.' FAC ¶ 47. But this assertion is devoid of any factual substantiation of Defendants' knowledge."); *Gadsden v. Gehris*, 2020 WL 5748094, at *7 (S.D. Cal. 2020) ("[T]he new allegation that Defendant Gehris shared Defendant McGrath's retaliatory motive is vague and conclusory, in that it does not contain a factual basis as to how Plaintiff knows they shared that motive."); *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 305 n.14 (S.D.N.Y. 2019) ("Absent some further information about the guard's basis of knowledge, it is not plausible—let alone cogent and at least as compelling—that a low-ranking security guard accompanying an executive during a negotiation would have intimate knowledge about the negotiation's details, including the particulars of any illicit agreements that were reached."); *Guess v. United States*, 2016 WL 1249597, at *8 n.18 (E.D. Va. 2016) (noting that "[p]etitioner merely advances his own proclamation as to how Post would have testified without providing any basis of knowledge behind such facially conclusory assertion" and that "[a]ccordingly, such facts are deemed speculative"), *appeal dismissed*, 677 F. App'x 109 (4th Cir. 2017); *Sosa v. Lantz*, 2013 WL 4441523, at *4 (D. Conn. 2013) (disregarding plaintiff's "conclusory" deposition statement because it "lack[s] any basis in personal knowledge"); *DiMaggio v. Int'l Sports Ltd.*, 1999 WL 675979, at *2 (S.D.N.Y. 1999) ("Plaintiff's affidavits contain only conclusory allegations, without any basis of knowledge, that Sugar was an 'employee/agent' of defendant corporation.").

respect to information "peculiarly within [a defendant's] possession and control" where the allegations were based on no more than "unsubstantiated suspicions." *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 107 (2d Cir. 2019). It is no more than an unsubstantiated suspicion that Judge Burgdorff engaged in any improper communications to corrupt Idlibi's appeal from the ruling against him.

Accordingly, as to Idlibi's allegations that Judge Burgdorff wrongly decided the parental termination rights proceeding against him, I conclude that these allegations are barred by the doctrine of absolute judicial immunity. As to Idlibi's additional allegations that Judge Burgdorff engaged in improper communications outside the scope of judicial immunity, I conclude that Idlibi has failed to plausibly allege that such improper communications occurred. Therefore, I will dismiss Idlibi's individual-capacity claims against Judge Burgdorff on the grounds of absolute judicial immunity and for failure to state plausible grounds for relief.

CONCLUSION

The Court GRANTS the defendant's motion to dismiss (Doc. #27). In light of the granting of the motion to dismiss, the Court DENIES as moot all other pending motions (Docs. #33, #34, #35, #36, and #38). The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 24th day of April 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge